IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JULIA & LEK COLE,

Plaintiffs,

vs.

SAFECO INSURANCE COMPANY OF ILLINOIS,

Defendants.

6:23-cv-01621-MC (Lead Case)

6:24-CV-2139- MC (Trailing Case)

**OPINION AND ORDER**

**MCSHANE, District Judge**

Plaintiffs Julia and Lek Cole filed an insurance claim with Defendant, Safeco Insurance Company of Illinois (Safeco), after a fire destroyed their property. Pending before the Court are cross motions for summary judgment. Because the insurance policy (the "Policy") does not require replacement with a similar home, Plaintiffs' Motion is GRANTED. Because Plaintiffs have not established a *Moody* violation, Defendant's Motion is GRANTED in part.

**BACKGROUND**

On December 24, 2022, an accidental fire destroyed Plaintiffs' home. Plaintiffs' insurer, Safeco, timely processed Plaintiffs' claim and began disbursing funds based on the Policy and property estimates. *See* Belesiu Decl. Ex. 1, ECF No. 57 (history of insurance claim showing actions taken and payments based on property estimates and Additional Living Expense after the

loss occurred). On January 7, 2023, Plaintiffs and Safeco jointly inspected the property. Belesiu Decl. Ex. 1, at 23. One month later, Safeco produced its final Replacement Cost Value (RCV) estimate of $252,494.65 for Plaintiffs' dwelling. Belesiu Decl. Ex. 7, at 43. Plaintiffs' adjustor reached a higher estimate. On March 9, 2023, less-than three months after the fire, Safeco issued payments amounting to the policy limit: $361,100. Believing they were entitled to more under the Policy, Plaintiffs filed this action.[1]

In April 2025, Plaintiffs demanded an in-litigation limited appraisal pursuant to the Policy. Gower Decl. ¶ 1, ECF No. 43; Gower Decl. Ex. 5, at 49. The appraisal panel awarded Plaintiffs an Actual Cash Value of $336,712.25 and a RCV of $378,751.77 for the dwelling. Gower Decl. Ex. 2, at 1, ECF No. 59 (the "Second Gower Decl."). Although the appraisal's RCV exceeded the Policy's limit, Plaintiffs paid for an Extended Dwelling Coverage (EDC) endorsement. *See* Gower Decl. Ex. 5, at 12. This EDC extended the Policy's limit up to 25% provided that, as relevant here, Plaintiffs "repair or replace the damaged dwelling." *Id.* at 54. There is no dispute that: (1) Plaintiffs' home was destroyed; (2) Plaintiffs built a new home; or (3) Plaintiffs' new home is over 100% larger than the home destroyed in the fire. The lone dispute on this issue is whether Plaintiffs had to "replace" their home with a substantially similar home in order to trigger coverage under the EDC.

The EDC is effectuated in accordance with the Loss Settlement provision of Coverage A of the Policy. The relevant portion of the Loss Settlement provision states that:

> Covered property losses are settled as follows:
> a. **Replacement Cost**. Property under Coverage A or B, including fences, at replacement cost . . . subject to the following:

---

[1] In November 2023, Plaintiffs filed this action (6:23-cv-01621-MC) alleging breach of contract for failure to pay structure damages, breach of implied covenant, and negligence *per se*. One year later, Plaintiffs filed a second action (6:24-cv-02139-AA) alleging breach of contract for failure to pay personal property damages. The Court later granted Plaintiffs' motion to consolidate the two cases.

> (1) We will pay the full cost of repair or replacement, but not exceeding the smallest of the following amounts:
> (a) the limit of liability under the policy applying to Coverage A or B;
> (b) the ***replacement cost*** of that part of the damaged building or fence for equivalent construction and use on the same premises as determined shortly following the loss;
> (c) the full amount actually and necessarily incurred to repair or replace the damaged building or fence as determined shortly following the loss; . . .
> (3) If the cost to repair or replace is $2,500 or more, we will pay the difference between ***actual cash value*** and ***replacement cost*** only when the damaged or destroyed property is repaired or replaced.

*Id.* at 31.

Safeco interprets the term “replace” in the EDC (and “replaced” in section three of the Loss Settlement provision) through the Policy’s definition of “replacement cost.” Def.’s Mot. Summ. J. 17. The Policy defines “replacement cost” as follows: “(1) In case of loss or damage to buildings, ***replacement cost*** means the cost, at the time of loss, to repair or replace the damaged property with new materials of *like kind and quality*, without deduction for depreciation.” Gower Decl. Ex. 5, at 19 (second emphasis added). Plaintiffs argue that the only condition for recovery of the withheld depreciation is that they replace their destroyed property, whether or not the replacement is similar in size or quality to the destroyed property. Plts.’ Mot. Partial Summ. J. 2, ECF No. 58. As discussed below, the Court agrees with Plaintiffs.

## STANDARD

The court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is “genuine” if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is “material” if it could affect the outcome of the case. *Id.* The court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*,

526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (quoting Fed. R. Civ. P. 56(e)).

**DISCUSSION**

While Safeco paid out the base limits of the Policy, Plaintiffs argue that because they replaced their home, Safeco neglected to cover up to an additional 25% pursuant to the EDC endorsement. Plts.' Mot. Partial Summ. J. 17. Because the appraisal award's RCV is more than the Policy's coverage limit absent the EDC, Plaintiffs argue that they are entitled to the difference. Safeco argues that because Plaintiffs did not replace the dwelling with a similar dwelling, the EDC coverage does not apply. Accordingly, Plaintiffs' breach of contract, implied covenant, and negligence *per se* claims hinge on how the Court interprets "replace" as used in the EDC.

## I. Interpretation of the Insurance Policy

### A. Plain Meaning Review

Because this dispute centers on the interpretation of an insurance policy, the Court must "ascertain the intention of the parties." *Hoffman Constr. Co. of Alaska v. Fred S. James & Co. of Oregon*, 313 Or. 464, 469 (1992) (quoting *Totten v. New York Life Ins. Co.*, 298 Or. 765, 770, 696 P.2d 1082 (1985)). Courts first turn to the language of the policy. *Id.* If the terms and conditions of the policy are ambiguous following a plain meaning review, the court considers the terms and conditions in the particular context used and then, if necessary, in the context of the policy as a whole. *Id.* at 470. If two or more plausible interpretations of the term are reasonable following this review, then the Court resolves the ambiguity in favor of the insured. *Id.* Courts examine the policy language from the perspective of the ordinary purchaser of insurance. *N. Pac. Ins. Co. v. Am. Mfrs. Mut. Ins. Co.*, 200 Or. App. 473, 478 (2005).

Here, the text of the Policy at issue requires the insured to "repair or replace the damaged dwelling." The Policy does not define the term "replace," so the Court must determine its meaning. Each party offers definitions of the word "replace" to advance their respective arguments. Safeco argues that the only definition that makes sense is one from *Rossier v. Union Auto. Ins. Co.*, finding that "'[r]eplacement' as thus used means, in our opinion, the restoration of the property to its condition prior to the injury."[2] 134 Or. 211, 215 (1930). While this is a reasonable interpretation of what "replace" could mean in the context of the Policy, other reasonable interpretations exist. Plaintiffs provide two functionally equivalent definitions for "replace": "to take the place of especially as a substitute or successor," and "to put something new in the place of." *Replace*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/replace (last visited July 23, 2026). As there are multiple reasonable interpretations of the plain language of the Policy, the Court is required to consider the disputed language "in the light of, among other things, the particular context in which that term is used in the policy and the broader context of the policy as a whole." *Hoffman*, 313 Or. at 470.

**B. "Replace" in the Broader Context of the Policy**

Safeco argues that the Policy's definition of "replacement cost" is binding on the section of the Loss Settlement provision that applies to the EDC. As relevant here, the Policy defines "replacement cost" as: "in case of damage to buildings, ***replacement cost*** means the cost, at the time of loss, to repair or replace the damaged property with new materials of like kind and quality, without deduction for depreciation." Gower Decl. Ex. 5, at 19. The loss settlement provision provides that, "(3) If the cost to repair or replace is $2,500 or more, we will pay the difference between ***actual cash value*** and ***replacement cost*** only when the damaged or destroyed property is

[2] The Court notes that *Rossier* dealt with repairs made to a vehicle damaged in a crash. 134 Or. at 214 (noting "there was not a total destruction of the automobile"). Unlike Plaintiffs' home, Rossier's vehicle was not destroyed.

repaired or replaced." *Id.* at 31. The Policy's definition of "replacement cost" is merely a way to calculate a cost the insurer may have to pay; i.e., the cost "to repair or replace the damaged property with materials of like kind and quality." *Id.* at 19. In contrast with Safeco's argument, the Loss Settlement provision does not seem to bind Plaintiffs to replace their home in any exact way. Rather, the provision conditions the withheld depreciation Plaintiffs receive based on whether they replaced their destroyed property. If so, the insurer "will pay the difference between ***actual cash value*** and ***replacement*** **cost**[.] *Id.* at 31. Stated differently, if an insured replaces a damaged house, the insurer will pay for the cost to replace the damaged house "with new materials of like kind and quality," otherwise known as RCV, regardless of whether the insured chooses to build a larger or more expensive house. Importantly, Plaintiffs are not seeking to recover their cost to build the more expensive house they chose to replace their damaged house with. Plaintiffs merely ask that Defendant pay the RCV of $378,751.77 that the appraisal panel awarded to rebuild the damaged home with a substantially similar home.[3]

In addition to *Rossier*, Safeco points to *Stephens v. Bohlman*, 314 Or. 344 (1992), seeking to overcome the Policy's lack of a definition for "replace." In *Stephens*, the Court defined "replace" as it related to whether the term gave the claimant notice that a nurse incorrectly placed a breathing tube in a patient's esophagus. 314 Or. at 351. The definition the Court arrived at was "replace means to 'restore to a former place, position, or condition.'" *Id.* (quoting Webster's New International Dictionary (3d ed. 1976). The *Stephens* court determined that "replace" as used in an

---

[3] Defendant argues "the insureds seek to compel their carrier to pay for a substantially larger and nicer home than the one destroyed by a fire" and "[n]aturally, the Coles want Safeco to pay for that [much larger] dream home." Def.'s Mot. 2, 13. But Defendant knows that these statements are not true as the appraisal panel's RCV was not tied, in any way, to the home Plaintiffs ended up replacing the destroyed home with. Instead, as Defendant is well aware, that RCV was the cost to rebuild a home identical to the one destroyed in the fire.

autopsy report did not give notice to the claimant that hospital staff had negligently misplaced the breathing tube. *Id.*

The Court does not view a case dealing with the statute of limitations in a medical malpractice case as particularly instructive in resolving whether an ordinary purchaser of insurance would necessarily infer that replacing a destroyed home—necessary to obtain the RCV of that destroyed home—means that their new home must be of "like kind and quality" in order to recover withheld depreciation.

Safeco's *Rossier* argument is equally unconvincing. In *Rossier*, the Court interpreted a vehicle collision policy which limited liability "to the actual cost of replacement of the property damaged or destroyed." 314 Or. at 215. The Court held that "replacement," in the context of the insurance policy, limited the insurer's liability to the cost of "restoration" of the property to its condition prior to collision. *Id.* "Replacement" in *Rossier* only served as a cap on what the insurer would owe to the plaintiff in the event of a collision. In contrast, Safeco argues here that "replaced" binds Plaintiffs to reconstructing their home in a narrow way to recover the RCV.

The parties appear to agree that had Plaintiffs built an identical home to the destroyed home, the EDC would clearly apply and Plaintiffs would be entitled to the RCV as awarded by the appraisal panel. Because the RCV acts as a cap on Plaintiffs' entitlement under the Policy, and because that cap is based on the RCV of the destroyed home, it makes no logical sense for Plaintiffs to forfeit their entitlement to the RCV simply because they chose to replace their destroyed home with a larger home. After all, the cost to build the larger home did not factor, in any way, in the appraisal award as determined by the appraisal panel.

Additionally, other portions of the Policy indicate that had Defendant wanted to condition RCV on replacement of the damaged property with like kind property, it knew how to do so. For

example, the Policy contains an endorsement for Equipment Breakdown Coverage. Gower Decl. Ex. 5, at 66. This endorsement notes that Defendant will pay "The cost at the time of the ***equipment breakdown*** to replace the covered property with property of like kind, capacity, size and quality[.]" *Id.* Unlike with the EDC endorsement, the Equipment Breakdown Coverage explicitly informs the insured that "Repair parts or replacement covered property must be: (1) of like kind, capacity, size and quality" to the damaged property. This provides further support indicating that Plaintiffs' obligation in the EDC to "replace the damaged dwelling" contains no limitation that the replacement must be of like kind and quality to the damaged dwelling. Again, how Plaintiffs chose to replace their home had no impact on the amount that Defendant was obligated to pay for the RCV of the damaged property.

If Safeco wanted to create a narrower way in which an insured could recover, then it could have easily inserted specific language into the parts of the Policy at issue. However, because "replace" as used in the EDC is ambiguous, the Court must construe the term against the drafter.

## II. <u>Breach of Contract Claims</u>

Safeco moves for summary judgment on Plaintiffs' breach of contract claims for structure damages and personal property. Safeco's argument here depends on (1) the Court agreeing with Defendant's argument that the Policy required Plaintiffs to replace their home with a home of like kind and quality and (2) accepting that absent the EDC coverage, Defendant overpaid Plaintiffs' claim. Because the Court rejects Defendant's like kind interpretation of the EDC, and because Plaintiffs provide the appraisal award indicating they are owed more under the Policy than Defendant previously paid out, Defendant is not entitled to summary judgment on these issues.[4]

---

[4] Although the Court agrees with Plaintiffs that the Policy did not require them to replace their home with a substantially similar home to qualify for EDC coverage, only Plaintiffs are bound by the appraisal award. Because Defendant is not bound by that award, it could perhaps offer evidence at trial that the RCV is, in fact, lower than the amount awarded by the appraisal panel. Depending on the jury's determination of the destroyed home's RCV, it

## III. **Breach of Implied Covenant**

Safeco moves for summary judgment on Plaintiffs' breach of implied covenant claim, arguing that it did not violate good faith and fair dealing in settling Plaintiffs' claim. Plaintiffs contend that a reasonable juror could find that Safeco refused to pay the claim without conducting a reasonable investigation, misrepresented aspects of the policy, and failed to implement prompt standards for the investigation of claims without the need for an expert.

In Oregon, there is a presumption of good faith and fair dealing in contracts. *Morrow v. Red Shield Ins. Co.*, 212 Or. App. 653, 661 (2007) (citing *Zygar v. Johnson*, 169 Or. App. 638, 645, 10 P.3d 326 (2000), *rev. den.*, 331 Or. 583, 19 P.3d 356 (2001)). "[H]owever, the implied covenant of good faith and fair dealing does not vary the substantive terms of the contract or impose obligations inconsistent with the terms of the contract." *Morrow*, 212 Or. App. at 661–62 (citing *Best v. U.S. National Bank*, 303 Or. 557, 563, 739 P.2d 554 (1987)). The substantive terms of the contract in this case are at issue, and the Court will not impose "obligations inconsistent with the terms of the contract." *Id.*

As discussed above, the main dispute centers around the interpretation of the term "replace." While the Court denied Safeco's Motion regarding the Policy's language, Safeco has not violated the implied covenant of good faith and fair dealing. Safeco provided a reasonable interpretation that the term "replace" limited Plaintiffs to replacing their destroyed home with one of "like kind and quality." As discussed above, Plaintiffs provided another interpretation equally reasonable, and the Court interprets the Policy against the drafter. But Safeco promptly paid out the full limit of the Policy under Coverage A. Safeco disbursed these funds within three months of the fire. Safeco also covered Plaintiffs' housing costs from the time of the fire to the day Plaintiffs

---

may be that Defendant did not, in fact, breach the insurance contract when adding up payments issued to Plaintiffs three months after the fire.

moved into their new home. Three months after the fire, Safeco estimated the destroyed home's Fair Market Valuation to be $370,000, just shy of the home's RCV as later awarded by the appraisal panel. In fact, Plaintiffs appear to concede that given Safeco's previous payments along with the appraisal award, their damages are capped at $26,506.25.[5] Pl.s' Mot. at 9. Under these facts, no reasonable juror could find that Safeco breached their duty of implied covenant of good faith and fair dealing.[6] Therefore, the Court grants Safeco's motion for summary judgment of Plaintiffs' claim for breach of implied covenant.

## IV. Negligence *Per Se* Claim

In Oregon, courts allow for recovery for emotional distress damages "when the defendant 'negligently causes foreseeable, serious emotional distress and also infringes some other legally protected interest.'" *Moody v. Oregon Cmty. Credit Union*, 371 Or. 772, 784 (2023) (quoting *Philibert v. Kluser*, 360 Or. 698, 703, 385 P.3d 1038 (2016)). In *Moody*, an insurance company denied life insurance proceeds to the widow of a deceased breadwinner. *Id.* at 775. The widow alleged that the insurance company negligently failed to pay benefits that a life insurance policy guaranteed to her in the event of her husband's accidental death. *Id.* As a result, she brought a common law negligence claim against the insurance company for alleged violation of ORS § 746.230(1). *Id.* at 776. The court held that, as a financially dependent widow, the plaintiff had a legally protected interest which supported a common law negligence claim for emotional distress against the insurer for violations of ORS § 746.230(1). *Id.* at 805. However, the court also cautioned that its "conclusion here does not make every contracting party liable for negligent

---

[5] The Court understands that there may be outstanding disputes at trial regarding Plaintiffs' entitlement to certain personal property claims. Those issues, however, are for a later day.

[6] On this record, if anyone acted unreasonably, it may have been Plaintiffs' adjustor. The estimates provided by Plaintiffs' adjustor appear, by any account, to be wildly inflated. For instance, Plaintiffs' adjustor provided one estimate of $576,772.84 to rebuild Plaintiffs' home. Stated differently, Plaintiffs' adjustor provided an estimate to rebuild that was a whopping 68% greater than the RCV awarded by the appraisal panel.

conduct that causes purely psychological damage, nor does it make every statutory violation the basis for a common-law negligence claim for emotional distress damages." *Id.* at 805–06. Accordingly, Oregon courts "will not permit recovery of purely emotional injury unless [they] determine that the claimed harm is 'of sufficient importance as a matter of public policy.'" *Id.* at 805 (quoting *Philibert*, 360 Or. at 705).

Here, Plaintiffs cannot recover for purely emotional injuries because the case at hand is unlike *Moody*. In *Moody*, the plaintiff was financially dependent on her deceased spouse. Additionally, the defendant utterly failed to reasonably investigate and promptly pay the plaintiff's insurance benefits. In contrast, while Plaintiffs are reliant upon their insurance benefits, the withheld depreciation is a relatively small sum compared to what Plaintiffs have already received from Safeco. Furthermore, Safeco did clearly and reasonably investigate and promptly pay Plaintiffs' insurance benefits. Safeco's alleged underpayment relates to the interpretation of the term "replace." While the Court has found that the term is ambiguous, and thus is construed against Defendant, neither party proffered unreasonable definitions. This Court agrees with Judge You's recent analysis in granting an insurer's motion for summary judgment in a garden-variety insurance dispute:

> In sum, this case involves both the same statute and a similar "mutual expectation of service and reliance" as *Moody*, but it lacks the "objective indicators of possibly serious emotional injury" and broader societal impact that were present in that case. This analysis, especially in light of the Oregon Supreme Court's direction that courts should be "hesitant" in creating new bases for claims seeking purely emotional damages, favors finding that plaintiff's claimed interest here is not sufficient to sustain such a claim.

*Lott v. Liberty Ins. Corp.*, 2026 WL 323081, at *7 (D. Or. Feb. 6, 2026).

The Court recognizes the hardship presented by Plaintiffs' home burning down and the following troubles with their insurer, but the dispute here does not involve a *Moody* violation. No reasonable juror could find that Safeco failed to engage in good faith to settle Plaintiffs' claim.

That the Court disagreed with Safeco's interpretation of "replace" does not mean that Safeco acted in bad faith. For the reasons stated above, the Court finds in favor of Safeco and grants its motion for summary judgment on Plaintiffs' negligence *per se* claim.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion (ECF No. 58) is GRANTED, and Defendant's Motion (ECF No. 56) is GRANTED in part.

IT IS SO ORDERED.

Dated this 31st day of August 2026.

/s/ Michael McShane
Michael McShane
United States District Judge